UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AARON SHIPMAN | CIVIL ACTION |
| VERSUS | No. 22-4545 |
| MOUNTAIN LAKE RISK RETENTION GROUP, INC. ET AL. | SECTION I |

ORDER & REASONS

Before the Court is plaintiff Aaron Shipman's ("Shipman") motion to remand[1] the above-captioned action to the Civil District Court for the Parish of Orleans which motion alleges a lack of diversity jurisdiction.[2] Defendants U.S. Xpress, Inc., U.S. Xpress Leasing, Inc. and Mountain Lake Risk Retention Group, Inc. (collectively, "opposing defendants") jointly oppose[3] the motion. Defendants Hartford Fire Insurance Company, Gary Strong ("Strong"), and State Farm Mutual Automobile Insurance Company did not file oppositions to Shipman's motion. For the following reasons, the Court grants Shipman's motion to remand.

I.  BACKGROUND

This action arises out of an accident that occurred on December 14, 2021 in St. Tammany Parish, in which the street sweeping vehicle Shipman was operating was

---

[1] R. Doc. Nos. 29 (motion to remand) and 39 (reply memorandum in support of motion to remand).
[2] Shipman is a citizen of Louisiana; U.S. Xpress, Inc. is incorporated in Nevada with its principal place of business ("PPB") in Tennessee; U.S. Xpress Leasing, Inc. is incorporated in Tennessee with its PPB in Tennessee; Mountain Lake Risk Retention Group, Inc. is incorporated in Vermont with its PPB in Vermont; Strong is a citizen of Texas; Hartford Fire Insurance Company is incorporated in Connecticut with its PPB in Connecticut; and State Farm Mutual Automobile Insurance Company is incorporated in Illinois with its PPB in Illinois. R. Doc. No. 1, at ¶¶ IV–XI.
[3] R. Doc. No. 32.

struck by an 18-wheeler truck operated by Strong, who was allegedly intoxicated at the time.[4] Shipman filed this lawsuit in the Civil District Court for the Parish of Orleans, alleging a number of state law causes of action against Strong as well as against Strong's employers, U.S. Xpress, Inc., U.S. Xpress Leasing, Inc, and U.S. Xpress Enterprises, Inc.[5] Shipman also named as defendants U.S. Xpress, Inc.'s insurer Mountain Lake Risk Retention Group, Inc.[6] and Shipman's employer's uninsured/underinsured motorist ("UM") insurers, Hartford Fire Insurance Company ("Hartford UM") and State Farm Mutual Automobile Insurance Company.[7]

Shipman's complaint alleges he sustained, or will sustain, the following damages: "past, present, and future physical pain and suffering," "past, present, and future mental pain and suffering," mental anguish, "past and future physical impairment and disability," "past and future medical expenses and rehabilitation expenses," "past and future loss of income," "past and future loss of earning capacity," "past and future loss of enjoyment of life," "loss of services," loss of consortium, loss of society, as well as punitive and exemplary damages.[8]

Defendants removed this action to federal court on November 16, 2022.[9] On January 30, 2023, Hartford Fire Insurance Company's ("Hartford WC") workers'

---

[4] R. Doc. No. 1-1, ¶¶ III–IV.
[5] *Id.* ¶ VI. U.S. Xpress Enterprises, Inc. was dismissed from this action upon oral motion by Shipman on February 28, 2023 at a call docket hearing before this Court. R. Doc. No. 25, at 1.
[6] R. Doc. No. 1-1, ¶ IX.
[7] *Id.* ¶ X.
[8] *Id.* ¶ II.
[9] R. Doc. No. 1.

compensation division filed an unopposed motion to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a).[10] Hartford WC's complaint-in-intervention named Shipman, U.S. Xpress, Inc., U.S. Xpress Leasing, Inc., U.S. Xpress Enterprises, Inc., Mountain Lake Risk Retention Group, Inc., Strong ("Strong"), and State Farm Mutual Automobile Insurance as defendants-in-intervention.[11] The complaint asserts that Hartford WC was Shipman's employer's workers' compensation insurer and, in that capacity, "has paid medical and indemnity benefits to and/or on behalf of Aaron Shipman totaling FIFTY-THREE THOUSAND ONE HUNDRED NINETY AND 70/100 DOLLARS ($53,190.70) . . . ."[12] Accordingly, Hartford WC asserts, "[p]ursuant to conventional and legal subrogation, Intervenor [Hartford WC] is entitled to collect from defendants[-in-intervention] the full and true sum of [$53,190.70], plus any additional amounts that may be paid to and/or on behalf of Aaron Shipman as a result of the Workers' Compensation payments that Intervenor has made and/or continue to make[.]"[13] This Court granted Hartford WC's motion to intervene on January 31, 2023.[14]

Shipman filed the instant motion for remand on March 20, 2023, on the ground that Hartford WC, as the intervening workers' compensation insurer, is not diverse from Hartford UM, the defendant UM insurer.[15]

---

[10] R. Doc. No. 20.
[11] *Id.* ¶ 2.
[12] *Id.* ¶ 7.
[13] *Id.* ¶ 11.
[14] R. Doc. No. 21.
[15] R. Doc. No. 29-1, at 2.

## II.     STANDARD OF LAW

District courts "have original jurisdiction over all civil actions where the matter in controversy exceeds $75,000[, exclusive of interest and costs,] and is between citizens of a state and citizens or subjects of a foreign state." *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003) (citing 28 U.S.C. § 1332(a)(2)). Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending," unless Congress provides otherwise.

"The removing party bears the burden of establishing that federal jurisdiction exists." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995) (citing *Gaitor v. Peninsular & Occidental S.S. Co.*, 287 F.2d 252, 253–54 (5th Cir. 1961)). "[A]ny ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." *Smith v. Bank of Am. Corp.*, 605 F. App'x 311, 314 (5th Cir. 2015) (quoting *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)).

Jurisdictional facts supporting removal are assessed at the time of removal. *Louisiana v. Am. Nat'l Prop. Cas. Co.*, 746 F.3d 633, 636–37 (5th Cir. 2014). However, "[i]f a [court] lacks subject matter jurisdiction, remand is permitted at any time before final judgment." *Falgout v. Mid State Land & Timber Co.*, No. 08-5088, 2009 WL 2163162, at *2 (E.D. La. July 16, 2009) (Lemelle, J.) (citing 28 U.S.C. § 1447(c) and

*Doddy v. Oxy USA*, 101 F.3d 448, 456 (5th Cir. 1996)). Fifth Circuit "jurisprudence dictates that when a non-diverse party is brought into the action, complete diversity is destroyed and the case should be remanded." *Id.* at *3 (citing *Doleac ex rel. Doleac v. Michalson*, 264 F.3d 470 (5th Cir. 2001)).

### III.  LAW & ANALYSIS

Shipman asserts in his motion to remand that after defendant Hartford WC intervened in the above-captioned action as the workers' compensation insurer, the parties were no longer diverse and, therefore, this Court lacks diversity jurisdiction and should remand this action.[16] The opposing defendants argue that remand is inappropriate because, first, Hartford WC was improperly joined as a defendant in this case and therefore "its citizenship should not be considered in evaluating diversity[,]"[17] and, second, even if the Court finds joinder was not improper, it should sever and remand only the claims in intervention instead of remanding the entire action.[18] The Court addresses each of the opposing defendants' arguments in turn.

#### a.  Improper Joinder

The Fifth Circuit has recognized two ways to establish improper joinder[19]: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to

---

[16] *Id.* at 2.
[17] R. Doc. No. 32, at 6–14.
[18] *Id.* at 14–22.
[19] "While the Fifth Circuit uses the term 'fraudulent joinder' and 'improper joinder' interchangeably, the preferred term is 'improper joinder.'" *Ayres v. Sears*, 571 F. Supp. 2d 768, 772 (W.D. Tex. 2008) (citing *Smallwood*, 385 F.3d at 571 n.1 ("We adopt the term 'improper joinder' as being more consistent with the statutory language than the term 'fraudulent joinder,' which has been used in the past. Although there is no substantive difference between the two terms, 'improper joinder' is preferred.")).

establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003).[20] As established by the Fifth Circuit in *Smallwood v. Illinois Central Railroad Co.*, "the test for fraudulent joinder is whether the defendant has demonstrated that there is *no possibility of recovery* by the plaintiff against an in-state[, non-diverse] defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state[, non-diverse] defendant." 385 F.3d 568, 573 (5th Cir. 2004) (emphasis added); *see also Cumpian v. Alcoa World Alumina, L.L.C.*, 910 F.3d 216, 220 (5th Cir. 2018).

Pursuant to the Fifth Circuit's holding in *Smallwood*, to resolve this inquiry, a court may conduct a Rule 12(b)(6)–type analysis, considering "the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant[.]" *Bayou Acquisitions, LLC v. Badger Daylighting Corp.*, No. 22-4541, 2023 WL 2367440, at *3 (E.D. La. Mar. 6, 2023) (Ashe, J.) (quoting *Smallwood*, 385 F.3d at 573). "Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder." *Id.* However, if "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.*

---

[20] The opposing defendants do not argue actual fraud in the pleadings, so the Court will not address the first method to establish improper joinder.

In determining the validity of an improper joinder claim, the Court does "not determine whether the plaintiff will actually or even probably prevail on the merits of the claim, but look[s] only for a possibility that the plaintiff might do so." *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 309 (5th Cir. 2005). "'[T]he existence of even a single valid cause of action against in-state defendants (despite the pleading of several unavailing claims) requires remand of the entire case to state court.'" *Bayou*, 2023 WL 2367440, at *3 (quoting *Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 412 (5th Cir. 2004)).

"The burden of persuasion placed upon those who cry 'fraudulent [or improper] joinder' is indeed a heavy one." *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981). When determining the validity of an improper joinder claim, "the district court 'must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff.'" *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995) (quoting *B., Inc.*, 663 F.2d at 549). "The court must also resolve all ambiguities in the controlling state law in the plaintiff's favor." *Id.*

The Court will apply the test articulated by the Fifth Circuit's in *Smallwood*—namely, whether "the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state[, non-diverse] defendant[.]" *Smallwood*, 385 F.3d at 573. The opposing defendants assert that it is "simply inconceivable" that Shipman could recover from Hartford UM, as the opposing "[d]efendants have $75,000,000 in available coverage to satisfy [Shipman's] bodily injury claims should

7

he be successful at trial[,]"[21] and Louisiana law provides that "uninsured motorist coverage is 'excess'" insurance and plaintiffs have "a right to receive from [a] defendant only that portion of his damages which exceed the limits of the tortfeasor's liability insurance." *White v. Patterson*, 409 So. 2d 290, 292 (La. App. 1 Cir. 11/23/81), *writ denied*, 412 So. 2d 1110 (La. 1982). In short, the opposing defendants ask the Court to find that there is no possibility that Shipman will recover against Hartford UM.[22] The Court cannot so find.

Before conducting the *Smallwood* Rule 12(b)(6)–type analysis, the Court first notes that, as the opposing defendants acknowledge, "complete diversity of citizenship existed among the parties at the time of removal."[23] Hartford UM, as a defendant in Shipman's state law case, was diverse from Shipman. The opposing defendants provide no arguments with regard to why the Court should apply the Fifth Circuit's test for improper joinder of a non-diverse defendant to an *undisputedly diverse* defendant. Nonetheless, even if the Court is to assume that the *Smallwood* test applies to Hartford WC as a now non-diverse intervenor, the Court finds that Shipman's "complaint states a claim under state law against the in-state defendant[.]" *Smallwood*, 385 F.3d at 573.

---

[21] R. Doc. No. 32, at 7.
[22] As the opposing defendants do not assert that Shipman "misstated or omitted discrete facts that would determine the propriety of joinder" of Hartford UM, the Court will not "pierce the pleadings and conduct a summary inquiry." *Smallwood*, 385 F.3d at 573.
[23] R. Doc. No. 32, at 5.

The opposing defendants assert that they have $75,000,000 in available coverage before Hartford UM's coverage. Yet they have not provided any insurance policy documents[24] substantiating this coverage to date and, as another section of this Court found to be "most problematic[,]" opposing defendants have not established that their insurance "will undisputedly provide coverage for [Shipman's] damages." *James v. Brierfield Ins. Co.*, No. 17-6931, 2017 WL 6033676, at *4 (E.D. La. Dec. 6, 2017) (Engelhardt, J.). As noted by the court in *James*,

> There is no [] stipulation [of coverage for the plaintiff's damages] before the Court. At this stage of litigation, the Court is not persuaded that [the d]efendants have shown that there is no possibility that [the p]laintiff can recover from [the UM insurer]. The attached policies, which contain numerous exclusions and limitations, are insufficient to show that the [d]efendants' policies will cover all damages to [the p]laintiff, such that there is no possibility of recovery from [the UM insurer].

*Id.*

Notably, unlike in the instant case, the court in *James* had access to the defendant's insurance policy documents and nonetheless found it was "plausible that [the p]laintiff may have a claim against [the UM insurer] to the extent that the aforementioned policies do not cover some or all of his damages because of such policy exclusions or policy coverage provisions." *Id.* As counsel for the opposing defendants

---

[24] Opposing defendants have provided as exhibits (1) the affidavit of Geoffrey Beck ("Beck"), Senior Counsel of Risk Management at U.S. Xpress, Inc., stating that "U.S. Xpress, Inc., U.S. Xpress Leasing, Inc., and Strong have coverage for up to $75 million for [] Shipman's alleged bodily injury claim and at least $3 million in coverage for his alleged punitive damage claim" "provided in 15 policies issued by 14 different insurance carriers[,]" R. Doc. No. 32-3, at 1–2, and (2) Shipman's employer's UM insurance policy with Hartford UM, R. Doc. No. 32-4.

stated in a February 22, 2023 email to Shipman's counsel, opposing defendants have "voluntarily produced information showing up to $3 million in coverage and did so to confirm the named insured as US Xpress, Inc." but they "will not be producing any additional policies outside of written discovery."[25] And, in his affidavit, Beck states that U.S. Xpress, Inc., U.S. Xpress Leasing, Inc., and Strong's insurance "polices are subject to their terms and conditions[,]" but he does not specify what those terms and conditions include.[26]

As this Court concluded when granting a similar motion to remand in *Tureaud v. Kephart*, the opposing defendants have "provided no evidence, other than the limits of its own policy, which is not persuasive, that tends to show that there is no possibility that [Shipman] can recover from [Hartford UM]." No. 09-7269, 2010 WL 1254372, at *3 (E.D. La. Mar. 24, 2010) (Africk, J.). Nor have opposing defendants "admitted or stipulated that [their] polic[ies] will cover [Shipman's] claim in this case." *Id.* "Without such a stipulation, the possibility remains that [opposing defendants] will raise a coverage defense at a later stage of litigation." *McFarland v. Protective Ins. Co.*, No. 18-6789, 2019 WL 351150, at *3 (E.D. La. Jan. 29, 2019) (Barbier, J.).[27]

---

[25] R. Doc. No. 39-6, at 1.
[26] R. Doc. No. 32-3, at 2.
[27] *See* R. Doc. Nos. 14, at 6 ("[U.S. Xpress, Inc.] respectfully reserve their [sic] right to amend this Answer and Affirmative Defenses to identify and include any other appropriate defense(s) under the circumstances that may be determined through discovery or investigation of the claims alleged in [Shipman's] Petition."), 24, at 6 ("[Mountain Lake Risk Retention Group, Inc.] respectfully reserve[s] its right to amend this Answer and Affirmative Defenses to identify and include any other appropriate defense(s) under the circumstances that may be determined through

10

Furthermore, Shipman remains in treatment for his alleged injuries and consequently the extent of his damages has not been conclusively determined. Shipman, in his reply to opposing defendants' opposition, alleges that he "has been out of work since the accident, and has been recommended to undergo surgery[,]" including "an ACDF at C5-6, which is estimated to cost $151,782.50."[28] Regarding his back, Shipman states that he may need to continue treatment for the rest of his life.[29] Shipman also alleges that he "could have economic losses of millions of dollars[,]" as "he has been totally disabled since his accident, where he was making almost $50,000 per year."[30] Finally, Shipman also seeks punitive damages.[31]

In the absence of evidence establishing the coverage and exclusions of opposing defendants' insurance policies or a stipulation as to coverage, and considering the fact that the extent of Shipman's damages is still undetermined, the Court cannot conclude that "the defendant has demonstrated that there is *no possibility of recovery* by the plaintiff against" Hartford UM. *Smallwood*, 385 F.3d at 573 (emphasis added). As the party "cry[ing] 'fraudulent [or improper] joinder[,]'" the opposing defendants bear the "burden of persuasion[.]" *B., Inc.*, 663 F.2d at 549. They have failed to do so.

---

discovery or investigation of the claims alleged in [Shipman's] Petition"), and 27, at 6 (("[U.S. Xpress Leasing, Inc.] respectfully reserve their [sic] right to amend this Answer and Affirmative Defenses to identify and include any other appropriate defense(s) under the circumstances that may be determined through discovery or investigation of the claims alleged in [Shipman's] Petition.").
[28] R. Doc. No. 39, at 2.
[29] *Id.* (stating that the treatment for his back has thus far included "two medial branch blocks at L5-S1 . . . , and [he] is scheduled to undergo a radiofrequency ablation.")
[30] *Id.*
[31] R. Doc. No. 1-1, ¶ II.

### b. Sever and Remand Hartford WC's Claims

The opposing defendants urge this Court to sever and remand only Hartford WC's claims in intervention. The Court first notes that the opposing defendants filed no opposition to Hartford WC's motion to intervene as of right pursuant to Federal Rule of Civil Procedure 24(a), which was filed[32] and granted[33] as unopposed nearly three months ago. Opposing defendants were thus previously provided an opportunity to voice their objections to Hartford WC's intervention—including their arguments that Hartford WC is not an intervenor as of right—and did not do so. Opposing defendants' arguments regarding Hartford WC's intervention raised in their opposition to Shipman's motion are, simply put, a day late and a dollar short. Furthermore, "a workers' compensation insurer is an intervenor of right and should be treated as an intervenor-plaintiff." *Davis v. Sw. Sales Inc.*, No. 21-3608, 2021 WL 5504732, at *1 (W.D. La. Nov. 22, 2021). United States "[D]istrict [C]ourts in this Circuit have found that employers and workers' compensation insurers who have paid a plaintiff workers' compensation benefits are intervenors of right in a plaintiff's action against alleged tortfeasors." *Johnson v. Agility Fuel Sys., Inc.*, No. 20-733, 2021 WL 4693235, at *3 (M.D. La. Sept. 7, 2021), *report and recommendation adopted*, No. 20-733, 2021 WL 4694730 (M.D. La. Oct. 7, 2021).

---

[32] R. Doc. No. 20, at 1–2 ("Consent was obtained by notifying all counsel of this intervention and requesting counsel notify undersigned whether they had an opposition. No opposition was voiced.").
[33] R. Doc. No. 21 (this Court's January 31, 2023 order granting Hartford WC's motion to intervene).

12

The Court also finds that, despite opposing defendants' arguments to the contrary,[34] Hartford WC's intervention is proper as it independently meets the jurisdictional requirements of 28 U.S.C. § 1332—namely, that there "be diversity of citizenship between the intervenors and the defendants and the amount in controversy with respect to the intervention must exceed $75,000." *Id.* (citing *Griffin v. Lee*, 621 F.3d 380 (5th Cir. 2010). Hartford WC is analyzed as a plaintiff for purposes of the diversity analysis. *See Balboa v. Metso Minerals Indus., Inc.*, No. 18-9968, 2019 WL 8888170, at *3 (E.D. La. Jan. 2, 2019) ("An intervenor who has paid workers compensation benefits to an employee or will pay benefits in the future, and who is seeking to recover those payments and any future payment obligations from a third-party tortfeasor, is properly aligned with the Plaintiff."). All defendants-in-intervention are diverse from Hartford WC and the value of Hartford WC's claims in intervention exceed $75,000, exclusive of interest and costs.[35]

---

[34] R. Doc. No. 32, at 17–18.

[35] The burden of proving satisfaction of the amount in controversy requirement "is met if (1) it is apparent from the face of the petition that the claims are likely to exceed $75,000, or, alternatively, (2) the defendant sets forth 'summary judgment type evidence' of facts in controversy that support a finding of the requisite amount." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) (citations omitted). At the time of Hartford WC's intervention, Hartford WC had "paid medical and indemnity benefits to and/or on behalf of Aaron Shipman totaling [$53,190.70]" and Hartford WC's complaint further seeks reimbursement for amounts already paid and "any additional amounts that may be paid to and/or on behalf of Aaron Shipman as a result of the Workers' Compensation payments that Intervenor has made and/or continue to make," as Shipman's claimed damages "are continuing[.]" R. Doc. No. 22, at 3–5. Further, Shipman avers that "[h]e has already incurred over $75,000 of medical specials, and those damages are compounding." R. Doc. No. 39, at 2. The Court therefore finds that it is likely that the amount in controversy requirement for jurisdiction over Hartford WC's claims in intervention is satisfied on the face of its petition.

The Court turns next to opposing defendants' argument that the Court should sever Hartford WC's claims.[36] The determination of a motion to sever lies within the discretion of the Court: "[t]he court may [] sever any claim against a party." Fed. R. Civ. P. 21. "To determine whether claims should be severed, a district court may consider the following factors: (1) whether the claims arose out of the same transaction or occurrence; (2) whether the claims present common questions of law or fact; (3) whether settlement or judicial economy would be promoted; (4) whether prejudice would be averted by severance; and (5) whether different witnesses and documentary proof are required for separate claims." *White v. New Orleans & Gulf Coast Ry. Co.*, No. 19-10389, 2021 WL 5387665, at *1 (E.D. La. Nov. 18, 2021) (Barbier, J.) (quoting *Pizani v. St. Bernard Par.*, No. 12-2541, 2013 WL 1403317, at *4 (E.D. La. Apr. 5, 2013) (Berrigan, J.)).

The Court finds that severing Shipman's and Hartford WC's claims and remanding only the latter would not be appropriate. Both parties' claims are based upon the same precipitating event and involve common questions of fact, likely requiring many of the same witnesses and evidence. Further, the opposing defendants have offered no arguments as to how judicial economy or settlement would be promoted by creating two parallel actions, nor have they articulated how prejudice

---

[36] The Court need not address the parties' arguments concerning Rule 19, as Hartford UM was already a party to the above-captioned action when Hartford WC filed its motion to intervene and therefore Rule 19 is inapplicable. *See Puerto Rico Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriquena, Inc.*, 257 F. Supp. 3d 225, 232 (D.P.R. 2017) ("As Ayers is already a party to this action, Rule 19 does not apply to him." (quoting *Jercich v. County of Merced*, No. 06-00232, 2006 WL 3747184, at *8 (E.D. Cal. Dec. 19, 2006))).

would be averted by severance. Finally, Hartford WC, as a worker's compensation insurer who has paid benefits, is an intervenor as of right. *Davis*, 2021 WL 5504732, at *1. The Court finds that the interests of justice and judicial economy would be best served by allowing the action to proceed in its present form, and the Court therefore declines to exercise its discretion to sever and remand only Hartford WC's claims in intervention.[37]

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Shipman's motion to remand is **GRANTED**, and this case is **REMANDED** to the Civil District Court for the Parish of Orleans, State of Louisiana for further proceedings.

New Orleans, Louisiana, April 25, 2023.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[37] As the Court finds remand of the entire action to be appropriate, it need not reach opposing defendants' argument that Hartford WC "is not in jeopardy of waiving its right to recovery [of] the benefits it paid." R. Doc. No. 32, at 22.